USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/23/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
FIRST INDEMNITY OF AMERICA
INSURANCE COMPANY, ET AL.,         :

               Plaintiffs,         :         **MEMORANDUM & ORDER**

       -against-         :         03 Civ. 6634 (KMW)(KNF)

STAMATIOS SHINAS, ET AL.,         :

               Defendants.         :
------------------------------------------------------X

KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

## I. INTRODUCTION

Plaintiffs First Indemnity of America Insurance Company ("FIA") and AXA Global Risk U.S. Insurance Company ("AXA") (collectively "plaintiffs") have moved, pursuant to Rule 45(e) of the Federal Rules of Civil Procedure, to hold in contempt non-party Scott Yaffe ("Yaffe") for his failure to: (a) appear for oral examination; and (b) produce documents, pursuant to subpoena. Yaffe is an attorney with the law firm Lindabury, McCormick and Estabrook, P.A. ("Lindabury"), and counsel to non-party Highlands Insurance Company ("Highlands"). Plaintiffs also seek an order directing Yaffe to appear for oral examination and to produce the subject documents, and an award of the attorney's fees and costs they incurred in connection with bringing the instant motion.

Highlands opposes the motion to hold Yaffe in contempt. In addition, by cross motion, Highlands asks the Court to: (1) quash the subpoena issued to Yaffe; (2) issue a protective order enjoining plaintiffs and their counsel from using any confidential information they may have

1

obtained and barring them from obtaining further discovery; (3) issue an order holding attorney Robert E. Nies, and the law firm Wolff & Samson, PC, counsel to the plaintiffs, in contempt for abuse of process; and (4) award Highlands the reasonable attorney's fees and costs it incurred as a result of opposing plaintiffs' motion for contempt and filing its cross motion. In reply, the plaintiffs contend, among other things, that Highlands has no standing to bring the instant motion to quash and, moreover, that motion is untimely.

## II. BACKGROUND

FIA, a New Jersey corporation, procures the issuance of surety payment and performance bonds and provides related services in connection with such bonds. AXA, a New York corporation, executes performance and payment bonds as surety in the construction industry. Yaffe and Lindabury serve as attorneys for Highlands on surety bond matters.

The complaint alleges, among other things, violations of the Federal Racketeer Influenced and Corrupt Organizations Act, fraud, constructive fraud and unjust enrichment. According to plaintiffs, the defendants – various individuals, partnerships, corporations and joint ventures – engaged in an "elaborate scheme" to defraud plaintiffs through the creation of a number of sham business entities whose main purpose was to procure performance and payment bonds from AXA and other sureties in order to gain access to government contracts. Plaintiffs claim that the defendants then diverted the bonded contract proceeds for their personal financial gain. As a result, plaintiffs contend, they have had to assume the burden of completing the projects undertaken by the defendants and paying any subcontractors.

On January 20, 2005, counsel to the plaintiffs served Yaffe with a subpoena *duces tecum* (the "Subpoena"). The Subpoena directed Yaffe to appear for oral examination at the offices of

plaintiffs' counsel on February 9, 2005, and to bring with him any and all documents, exclusive of any privileged communications: (i) evidencing any business or personal relationship between Yaffe and any defendant; (ii) evidencing any business or personal relationship between Yaffe and any project owner(s) with respect to any project(s) for which surety bonds were issued on behalf of any defendant; (iii) reflecting any communications between Yaffe and any defendant with respect to services he provided; (iv) concerning the default of any corporate defendant on any project for which surety bonds were issued on behalf of any defendant; (v) reflecting any communications between Yaffe and any project owner(s) with respect to any project for which surety bonds were issued on behalf of any defendant; and (vi) reflecting any distribution of contract proceeds from any project for which surety bonds were issued on behalf of any defendant.

After the Subpoena was served, counsel to the plaintiffs and counsel to Highlands engaged in written correspondence concerning the conditions under which Yaffe would comply with the Subpoena. A review of counsels' communications in this regard reveals, among other things, that on February 7, 2005, Yaffe was representing both Highlands and individual defendant John Rusin ("Rusin"), and that the plaintiffs' reason for seeking the discovery demanded in the Subpoena was to obtain information about Rusin and defendant Alasia Company ("Alasia").

Specifically, the plaintiffs seek "non-privileged, factual information" concerning Yaffe's relationship with Rusin, Alasia and a joint venture comprised of Alasia and GBE Contracting Corporation, as well as "the fraud perpetrated by the defendants." The plaintiffs maintain that Yaffe has relevant information about these matters because "apparently [Yaffe] . . . served for

3

years in a non-legal caretaker or custodial trustee role for defendant Alasia's assets." The plaintiffs contend that they learned about Yaffe's alleged relationship with Rusin and Alasia from Rusin's personal tax accountant, Tom Daly, in late December 2004. Plaintiffs state: "The information provided included the contention by Mr. Daly that [] Yaffe was in control of the finances of Alasia and that Alasia had paid personal bills of [] Rusin." Plaintiffs contend that, even if Yaffe lacks personal knowledge of the specific bonds and projects at issue in this case, nevertheless, he may know about "the diversion of trust funds to Alasia and Rusin . . . the current use of those funds, and the misuse of the corporate form by the defendants for personal benefit." Such information, plaintiffs contend, "appears reasonably calculated to lead to the discovery of admissible evidence," Fed. R. Civ. P. 26(b)(1), by shedding light on the cause of the defaults on the bonded projects and the inability of the defendants to perform their contractual and financial obligations. Plaintiffs assert that they have no interest in, and do not seek, confidential information from or about Highlands.

On March 3, 2005, counsel to Highlands wrote to counsel to the plaintiffs informing him that Yaffe would appear for oral examination and would bring with him documents, "if any, that he has and which relate to the projects which are the subject matter of your complaint." Thereafter, counsel to Highlands, in a letter dated March 31, 2005, informed counsel to the plaintiffs that Yaffe, in fact, did not have any documents that fit the descriptions contained in the first through fourth and sixth categories of document requests. Moreover, counsel explained, with respect to the fifth category of requests, while Yaffe had information about communications regarding projects bonded by Highlands, he did not have any documents "evidencing communications for which a surety bond was issued by FIA or AXA on behalf of any of the

4

defendants in your case." Counsel also noted that Yaffe's activity on behalf of Highlands "postdate[d]" the filing of the instant complaint.

On April 8, 2005, counsel to Highlands announced that his client intended to move to quash the Subpoena. However, no action was taken at that time, nor did Yaffe appear for oral examination or produce any documents. Consequently, on May 20, 2005, plaintiffs filed the instant motion for an order of contempt against Yaffe for his failure to comply with the Subpoena. Highlands' cross motion followed.

In his affirmation in support of Highlands' cross motion, Yaffe contends that he has "no discoverable documents [or] discoverable testimony to offer." Furthermore, Yaffe states, "I possess no knowledge or documents directly or indirectly pertaining to any of the projects or bonds that are pled in the complaint." Yaffe notes that he began representing Highlands over a month after the instant action was commenced and, therefore, has "no first-hand knowledge of any facts relating to the complaint." Yaffe suggests that the Subpoena "necessarily seek[s] to obtain information belonging to Highlands." However, Yaffe maintains, "I do not conduct business with any of the Defendants or project owners nor do I have any personal relationships with them."

### III. DISCUSSION

*Standing*

The plaintiffs argue that Highlands lacks standing to move to quash the Subpoena because it is neither a party to the instant lawsuit nor the recipient of the Subpoena. In addition, the plaintiffs claim that Highlands has waived its right to object to the Subpoena because it failed to respond timely.

"In the absence of a claim of privilege, a party usually does not have standing to object to a subpoena directed to a non-party witness." Estate of Yaron Ungar v. Palestinian Authority, No. 18MSO302, 2005 WL 3005810, at *11 (S.D.N.Y. Nov. 7, 2005)(quoting Langford v. Chrysler Motor Co., 513 F.2d 1121, 1126 [2d Cir. 1975]). Whether a non-party has standing to quash a subpoena served on another non-party depends on the nature of the information sought. In Estate of Yaron Ungar, the court found that a non-party had standing to move to quash a subpoena which had been served on its attorneys and which sought information concerning the non-party's financial dealings with the defendant, because the information was protected by attorney-client privilege. See id. Courts have also found standing to quash subpoenas directed towards the personal bank or brokerage accounts of a non-party. See, e.g., Catskill Dev., L.L.C. v. Park Place Enter. Corp., 206 F.R.D. 78, 93 (S.D.N.Y. 2002) (finding that non-party Native American tribe had standing to quash subpoena directed to tribe's bank because tribe had privacy interest in its banking documents).

In this case, Highlands seeks to quash a subpoena directed to an attorney affiliated with the law firm it has retained as counsel. However, it does not appear that the information sought through the Subpoena is protected by attorney-client privilege or a privacy interest.

The Subpoena, by its express terms, seeks no information from or about Highlands and excludes any privileged communications. In motion papers, furthermore, counsel to the plaintiffs has explained that plaintiffs' purpose in seeking, through the Subpoena, to depose Yaffe, and obtain the subject documents from him, is to uncover information he may have about Rusin and others and their alleged involvement in fraudulent business activities. There is no suggestion that such information, if it exists, is protected by attorney-client privilege in virtue of the relationship

6

between Yaffe and Highlands. Moreover, any information that would be subject to a claim of privilege in virtue of that relationship has not been sought by the plaintiffs through the Subpoena. Furthermore, since the Subpoena does not seek information, including confidential information, from or about Highlands, that entity can have no privacy interest in the subpoenaed material. Therefore, the Court finds that Highlands lacks standing to object to the Subpoena.[1] Accordingly, Highlands' motion to quash the Subpoena is denied. Highlands' motions for a protective order, an order holding plaintiffs' counsel in contempt for abuse of process, and an award of attorney's fees also must be denied on the same ground.[2]

*Contempt of Court*

Rule 45 of the Federal Rules of Civil Procedure provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." Fed. R. Civ. P. 45(e). Under this rule, the court has power to issue an order of contempt on the basis of Yaffe's failure to comply with the Subpoena. See Diamond v. Simon, No. 89 Civ. 7061, 1994 WL 10622, at *1 (S.D.N.Y. Jan. 10, 1994).

In this case, there is no dispute that Yaffe was properly served with the Subpoena. Thereafter, through his representative, counsel to Highlands, Yaffe first agreed to appear for oral examination and to produce documents, then asserted that he intended to move to quash the

---

[1] The Court notes that, although Yaffe claims to have no discoverable documents or testimony to offer in this matter, neither he nor any of the defendants have moved to quash the Subpoena. Moreover, Yaffe has not asserted a claim of privilege or proprietary interest in the subpoenaed material.

[2] Having found, for the reasons set forth above, that Highlands lacks standing to pursue its cross motions, the Court need not reach the issue of the timeliness of the motions.

Subpoena or limit the scope of the plaintiffs' inquiries. However, neither Yaffe nor counsel to Highlands took any such action, nor did they raise any opposition to plaintiffs' letter application for permission to bring the instant motion. Further, the affirmations submitted by Yaffe and counsel to Highlands in opposition to the instant motion and in support of Highlands' cross motions have not adequately explained the failure to comply with the Subpoena. Yaffe and Highlands contend, among other things, that the testimony and documents plaintiffs seek to elicit are irrelevant. However, under the circumstances, the Court finds that the testimony and material sought from Yaffe are likely to be relevant to the subject matter of this litigation. Accordingly, the Court finds that Yaffe must respond to the Subpoena by January 6, 2006, or the Court will certify facts to the assigned district judge so that he may be adjudged in contempt.

Plaintiffs seek an award of reasonable attorney's fees and costs incurred as a result of Yaffe's noncompliance with the Subpoena and to oppose Highlands' cross motion. The Court finds that an award of attorney's fees and costs is appropriate in this case. Accordingly, plaintiffs are directed to submit an itemized list of expenses with supporting documentation for the Court's approval. Any objection to the reasonableness of the amount claimed by the plaintiffs must be submitted to the Court not more than ten days after service of the plaintiffs' lists of expenses.

## IV. CONCLUSION

For the reasons set forth above, Yaffe shall, on or before January 6, 2006, appear for oral examination and produce documents to the plaintiff in accordance with the Subpoena, or the Court will certify facts to the assigned district judge so that he may be adjudged in contempt. In addition the plaintiffs' motion for an award of attorney's fees and costs incurred as a result of bringing the instant motion and opposing Highlands' cross motion is granted. Finally,

Highlands' cross motion is denied in every respect.

Dated: New York, New York
       December 22, 2005

SO ORDERED:

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

Copies sent to:

Eric J. Levine, Esq.
Robert E. Nies, Esq.
Roger P. Sauer, Esq.
Scott M. Yaffe, Esq.
Matthew H. Giger, Esq.
Jeffrey Rosenberg, Esq.
Leatha J. Sturges, Esq.
Peter K. Ledwith, Esq.
George J. Razis, Esq.
Bruce R. Hafner, Esq.
George Vomvolakis, Esq.