UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
                                       |
FIRST INDEMNITY OF AMERICA INSURANCE   |
COMPANY and AXA GLOBAL RISKS U.S.      |
INSURANCE COMPANY,                     |
                                       |
              Plaintiffs,              |
                                       |   03 Civ. 6634 (KMW)(KNF)
       -against-                       |
                                       |      OPINION & ORDER
STAMATIOS SHINAS a/k/a STEVE SHINAS    |
et al.,                                |
                                       |
              Defendants.              |
                                       |
---------------------------------------X
KIMBA M. WOOD, U.S.D.J.:

     Plaintiffs First Indemnity of America Insurance Company

("FIA") and AXA Global Risks U.S. Insurance Company ("AXA";

collectively, "Plaintiffs") bring this action to recover for

losses they sustained on surety bonds issued for construction

projects throughout New York State.  Defendants are, among

others, the contractors on whose behalf the surety bonds were

issued, and the individuals who agreed to indemnify Plaintiffs

for losses sustained on the bonds.

     Plaintiffs move for partial summary judgment on their

contractual and common law indemnification claims (Counts X and

XI) against those defendants, who, Plaintiffs contend, executed

indemnity agreements in favor of Plaintiffs (the "Responding

1

Defendants").[1]  Plaintiffs also move for summary judgment on all
of defendant M. Demetrulacos's counterclaims.[2]  (D.E. 106.)  As
set forth below, the Court GRANTS in part and DENIES in part
Plaintiffs' motion for summary judgment on their contractual
indemnification claim; DENIES Plaintiffs' motion for summary
judgment on their common law indemnification claim; and GRANTS
Plaintiffs' motion for summary judgment dismissing all of M.
Demtrulacos's counterclaims.

    More broadly, Plaintiffs in this action allege that
Defendants, including several members of the Shinas family, were

---

[1] Plaintiffs move on their contractual indemnification claim
against GBE Contracting Corp. ("GBE"), Alasia Co. ("Alasia"),
Stamatios Shinas ("S. Shinas"), George Shinas ("G. Shinas"), Vasilios
Shinas ("V. Shinas"), Parenthenopi Shinas ("P. Shinas"), Maria Shinas
("M. Shinas"), Irene Tzivelekis ("I. Tzivelekis"), Maria Demetrulacos
("M. Demetrulacos"), John Rusin ("J. Rusin"), and Leila Rusin ("L.
Rusin") (collectively, the "Responding Defendants"), and against
Alasia and GBE on their common law indemnification claim.
    The Court notes that all Responding Defendants have filed
documents that are putative Local Rule 56.1 Responses.  (J. Rusin, L.
Rusin, and Alasia's Resp. to Pls.' Rule 56.1 Statement (undocketed);
M. Demetrulacos's Resp. to Pls.' Rule 56.1 Statement (D.E. 101); I.
Tzivelekis 56.1 Statement (D.E. 179); and S. Shinas, G. Shinas, V.
Shinas, P. Shinas, M. Shinas, and GBE's Am. Resp. to Pls.' Rule 56.1
Statement (D.E. 178).)  However, only S. Shinas, G. Shinas, M. Shinas,
and GBE General (the "Opposing Shinas Defendants") filed a memorandum
of law in opposition to Plaintiffs' motion.
    In addition, M. Demetrulacos filed an Attorney's Certification in
Support of Defendant M. Demetrulacos' Affidavit in Opposition to
Plaintiffs' Motion for Partial Summary Judgment ("M. Demetrulacos'
Aff. in Opp'n"), which the Court construes as a memorandum of law in
opposition to Plaintiffs' motion.  (D.E. 142.)  The remaining
Responding Defendants did not submit memoranda in opposition to
Plaintiffs' motion.

[2] M. Demetrulacos is the only Defendant to assert any
counterclaims in this action.

part of an elaborate scheme to defraud Plaintiffs.  Specifically, Plaintiffs allege that Defendants prepared and submitted false financial statements, to obtain bonding capacity far beyond what they otherwise would have been able to secure.  (Second. Am. Compl. ¶¶ 2-4.)  Plaintiffs also allege that the Defendants succeeded in diverting money away from these bonded projects for their own personal gain. (Id.)

The Shinas Defendants[3] here move for summary judgment on all of Plaintiffs' fourteen claims against them (the "Shinas Defendants' motion").[4]  (D.E. 176.)  As set forth below, the Court GRANTS in part and DENIES in part the Shinas Defendants' motion.  The Court denies the vast majority of the Shinas Defendants' motion because, among other reasons, the Shinas

---

[3] The Shinas Defendants' motion is brought on behalf of GBE, GBE Contracting Corp. and Cosmos Contracting Corp. a Joint Venture ("GBE & Cosmos Contracting"), GBE Contracting Corp. and Alasia Corp. a Joint Venture ("GBE & Alasia"), GBE General Contracting Corp. ("GBE General"), GBE Contracting Corp. and GBE General Contracting Corp. a Joint Venture ("GBE & GBE General"), Shinas Contracting Corp. ("Shinas Contracting"), Cosmos and GBE a Joint Venture ("Cosmos & GBE"), Matos Corporation a/k/a Matsos Contracting Corporation ("Matos"), Maria 2nd Realty Corp. ("Maria Realty"), S. Shinas, G. Shinas, V. Shinas, P. Shinas, M. Shinas, Emilia Shinas a/k/a Emily Shinas ("Em. Shinas"), and Evangelos Shinas ("Ev. Shinas") (collectively the "Shinas Defendants").

[4] Plaintiffs, in addition to their contractual and common law indemnification claims (Counts X and XI), allege violations of the Racketeer Influence and Corrupt Organizations Act ("RICO") (Count I), violations of New Jersey's civil RICO statute (Count II); fraud and negligent misrepresentation (Counts III-IV; VI-VIII)), unjust enrichment (Count V), diversion of trust funds (Counts XII and XIII), and fraudulent conveyance (Count XIV). See Second Am. Compl.

Defendants' involvement in the alleged fraud remains a disputed question of fact.

**FACTUAL BACKGROUND**

Unless otherwise noted, the following facts are undisputed and are derived from the parties' Local Rule 56.1 statements, affidavits, and other submissions.

Plaintiffs provided surety bonds for construction projects undertaken by, among others, defendants Cosmos Contracting Corp. ("Cosmos Contracting") and Alasia.  Parties protected by these bonds later submitted claims on these bonds to Plaintiffs. Plaintiffs here move for partial summary judgment, requiring the Responding Defendants to indemnify Plaintiffs, pursuant to four different indemnity agreements, for costs Plaintiffs incurred as a result of the claims made on these bonds.

A brief description of those four indemnity agreements, as well as Plaintiffs' losses on the bonds, is set out below.

**I.   1996 Indemnity Agreement (GBE and Cosmos Group)**

As a condition of providing surety bonds for certain construction projects undertaken by Cosmos Group and GBE, FIA required Cosmos Group and GBE, along with certain of their principals and their wives, to enter into indemnity agreements in favor of FIA.

Accordingly, G. Demtrulacos, individually and as President

4

of Cosmos Group, and G. Shinas, individually and as President of
GBE, entered into an Agreement of Indemnity, dated April 29, 1996
(the "1996 Indemnity Agreement") with FIA.  The 1996 Agreement
refers to (1) FIA as "the Surety"; (2) Cosmos Group and GBE as
"the Contractor"; and (3) G. Shinas, S. Shinas, V. Shinas, M.
Shinas, G. Demtrulacos, and M. Demetrulacos as "the Indemnitors."
(Alongi Aff. Ex. A.)

The 1996 Indemnity Agreement provides, in relevant parts:

> The Contractor and Indemnitors for themselves, their .
> . . successors and assigns, jointly and severally,
> hereby covenant and agree with the Surety, its
> successors and assigns as follows: . . . .
>
> [To] exonerate, indemnify, and keep indemnified the
> Surety from and against any and all liability for
> losses and/or expenses of whatsoever kind or nature
> (including, but not limited to, interest, court costs
> and counsel fees) and from and against any and all such
> losses and/or expenses which the Surety may sustain and
> incur: (1) By reason of having executed or procured the
> execution of the Bonds, (2) By reason of the failure of
> the Contractor or Indemnitors to perform or comply with
> the covenants and conditions of the Agreement or (3) In
> enforcing any of the covenants and conditions of this
> Agreement. . . .
>
> In the event of any payment by the Surety the
> Contractor and Indemnitors further agree . . . the
> Surety shall be entitled to charge for any and all
> disbursements made by it in good faith . . . whether or
> not such liability, necessity or expediency existed;
> and that vouchers or other evidence of any such
> payments made by the Surety shall be prima facie
> evidence of the fact and amount of the liability to the

<u>Surety</u>. . . .[5]

(Alongi Aff. Ex. A (emphasis added).)

At some point in the next year, Cosmos Group ceased active operations.  The surety broker who obtained bonds for Cosmos Group pursuant to the 1996 Indemnity Agreement received no further requests to obtain surety bonds on Cosmos Group's behalf. (Page Aff. ¶ 17.)

## II.  1997 Indemnity Agreement (Cosmos Contracting/Demetrulacos)

On January 29, 1997, a certificate of incorporation for "Cosmos Contracting," a new entity, was filed with the New York State Department of State.  (Page Aff. Ex. B.)  In connection with surety bonds issued on behalf of Cosmos Contracting, FIA required Cosmos Contracting and its principals to execute another indemnity agreement.

Notarized signatures of G. Demetruclacos, individually and as President now of Cosmos Contracting, and his then wife M. Demetrulacos, appear on an Agreement of Indemnity dated February 10, 1997 (the "1997 Indemnity Agreement").  The 1997 Indemnity Agreement refers to (1) FIA as "the Surety"; (2) Cosmos Contracting as "the Contractor"; and (3) G. Demetrulacos and M.

---

[5] The Agreement also provides that: "In the event the Surety procures the execution of the Bonds by other sureties, . . . then all the terms and conditions of this Agreement shall inure to the benefit of such <u>other sureties</u> . . . ."  (<u>Id.</u> (emphasis added).)

Demetrulacos as "the Indemnitors."  (Alongi Aff. Ex. A.)

## III. 1998 Indemnity Agreement (Cosmos Contracting/Tvivelkis)

Following a change in management at Cosmos Contracting, FIA required Cosmos Contracting and its principals to enter into another indemnity agreement.  Notarized signatures of William Tzivelkis ("W. Tzivelkis"), individually and as President of Cosmos Contacting, and his wife I. Tzivelkis appear on an Agreement of Indemnity, dated July 14, 1998 (the "1998 Indemnity Agreement").  The 1998 Indemnity Agreement refers to (1) FIA as "the Surety"; (2) Cosmos Contracting as "the Contractor"; and (3) W. Tzivelkis and I. Tzivelkis as "the Indemnitors."  (Alongi Aff. Ex. A.)

The terms of the 1997 and 1998 Indemnity Agreements, issued on behalf of Cosmos Contracting as the named contractor, are in relevant parts identical to the terms of the 1996 Indemnity Agreement, issued on behalf of Cosmos Group and GBE as the named contractors.[6]

## III. Alasia Indemnity Agreement

On or about April 1, 1999, Alasia, GBE, and Alasia & GBE (a joint venture), requested that FIA obtain surety bonds on their

---

[6] The parties dispute numerous aspects of the relationship between Cosmos Group and Cosmos Contracting, including whether, as Plaintiffs allege, Cosmos Contracting continued as the "successor" company to Cosmos Group.

behalf.  Notarized signatures of J. Rusin, individually and as
President of Alasia; G. Shinas, individually and as President of
GBE and GBE & Alasia; L. Rusin; and P. Shinas appear on an
Agreement of Indemnity dated April 1, 1999 (the "Alasia Indemnity
Agreement").  The Alasia Indemnity Agreement refers to (1) FIA as
"the Surety"; (2) Alasia, GBE & Alasia, and GBE as "the
Contractor"; and (3) J. and L. Rusin, and G. and P. Shinas as
"the Indemnitors."  (Alongi Aff. Ex. D.)

The terms and conditions of the Alasia Indemnity Agreement
are in relevant part identical to the terms and conditions of the
1996, 1997, and 1998 Indemnity Agreements.

## IV.   The Cosmos Contracting Bonds and the Alasia Bond

Between November 1997 and January 2000, and at the request
of FIA, AXA, as surety, executed at least four payment and
performance bonds on behalf of Cosmos Contracting, as principal,
in connection with contracts Cosmos Contracting entered into with
the New York State Department of Transportation (NYSDOT) and the
New York State Thruway Authority (NYSTA) (the "Cosmos Contracting
Bonds").  (Alongi Aff. Ex. E.)

On or about April 9, 1999, AXA, as surety, executed a
payment and performance bond on behalf of Alasia, as principal,
in connection with a contract Alasia entered into with the New
York City Housing Authority (the "Alasia Bond").  (Id.)

8

The Cosmos Contracting Bonds and the Alasia Bond
(collectively, the "Bonds") secured Cosmos Contracting's and
Alasia's performances on the bonded projects, as well as the
payment of subcontractors, laborers, and material suppliers on
the bonded projects.  (Alongi Aff. Ex. E.)

## V.   Plaintiffs' Losses on the Bonds

### A.   Cosmos Contracting Payments

On or about July 3, 2001, W. Tzivelkis, as then President of
Cosmos Contracting, executed voluntary default letters on each of
the Cosmos Contracting bonded projects.  Following Cosmos
Contracting's defaults, the NYSDOT and NYSTA made demands upon
AXA under the Cosmos Contracting performance bonds to complete
Cosmos Contracting's remaining obligations on each of the bonded
projects, and AXA received claims under the payment bonds for
payment for labor and/or materials.  After investigating the
merits of the demands and claims, Plaintiffs agreed to complete
the Cosmos Contracting bonded projects and make payments to
settle the payment claims.

Plaintiffs allege they have incurred, through March 31,
2006, net losses (including legal and consulting fees) in the
amount of $20,939,812.36 in satisfying the payment and
performance claims on the Cosmos Contracting Bonds.  (Alongi Aff.
Ex. G.)  Thus, Plaintiffs claim that, pursuant to the 1996, 1997,

and/or 1998 Indemnity Agreements, defendants GBE, S. Shinas, G. Shinas, M. Shinas, M. Demetrulacos, W. Tzivelekis, and I. Tzivelekis are obligated to indemnify Plaintiffs for their net losses, costs, and expenses on the Cosmos Contracting Bonds in the amount of $20,939,812.36.

**B.    Alasia Payments**

On or about June 2, 2000, AXA received a claim against the Alasia Bond from T&T Electrical Corp., alleging that Alasia failed to pay $174,000 for labor and materials in connection with the Tompkins Houses Project.  T&T Electrical filed suit in New York state court against AXA, among others, seeking to enforce its bond claim.  On or about February 14, 2002, AXA received a claim against the Alasia Bond from Carty Associates, Inc., alleging that Alasia failed to pay $17,335.74 for labor and materials in connection with the housing project.  After investigating the merits of the claims, Plaintiffs settled the bond claims by making payments to T&T Electrical and Carty Associates, Inc. in the amounts of $170,000.00 and $17,335.74 respectively.  (Alongi Aff. Ex. H.)

Plaintiffs allege they have incurred, through March 31, 2006, losses (including legal and consulting fees) in the amount of $194,326.30 in satisfying claims pursuant to the Alasia Bond. Plaintiffs seek to recover that amount pursuant to the Alasia

Indemnity Agreement.

**STANDARD OF REVIEW**

Summary judgment is appropriate only if the pleadings,
affidavits, and disclosures that form the record establish that
there is no "genuine issue as to any material fact and that the
movant is entitled to judgment as a matter of law." Fed. R. Civ.
P. 56(c). Summary judgment should be denied "if the evidence is
such that a reasonable jury could return a verdict" in favor of
the non-moving party. NetJets Aviation, Inc. v. LHC Commc'ns,
LLC, 537 F.3d 168, 178-79 (2d Cir. 2008). In deciding a motion
for summary judgment, the Court must construe the evidence in the
light most favorable to the non-moving party and must draw all
reasonable inferences in the non-moving party's favor. In re
"Agent Orange" Prod. Liab. Litig., 517 F.3d 76, 87 (2d Cir.
2008). The non-moving party cannot, however, "escape summary
judgment merely by vaguely asserting the existence of some
unspecified disputed material facts, or defeat the motion through
mere speculation or conjecture." W. World Ins. Co. v. Stack Oil,
Inc., 922 F.2d 118, 121 (2d Cir. 1990) (internal citations and
quotations omitted).

In deciding a motion for summary judgment, the role of the
Court is not to ask whether "the evidence unmistakably favors one
side or the other but whether a fair-minded jury could return a

11

verdict for the plaintiff on the evidence presented." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).  Because the Court's role is limited in this respect, the Court may not make factual findings, determine credibility of witnesses, or weigh evidence.  See Jeffreys v. City of New York, 426 F.3d 549, 554 (2d Cir. 2005); Hayes v. N.Y. City Dep't of Corr., 84 F.3d 614, 619 (2d Cir. 1996); United States v. Rem, 38 F.3d 634, 644 (2d Cir. 1994).

## DISCUSSION

### I.   The Plaintiffs' Motion

#### A.   Contractual Indemnification Claim

Plaintiffs move for summary judgment on their contractual indemnification claim for losses sustained on the Cosmos Contracting Bonds pursuant to the 1996, 1997, and 1998 Indemnity Agreements, and for losses sustained on the Alasia Bond pursuant to the Alasia Indemnity Agreement (collectively, the "Indemnity Agreements").

The Court finds, first, that the terms of the Indemnity Agreements (which are in relevant part identical) are unambiguous, and entitle Plaintiffs to indemnification for all losses they sustained as a result of issuing the Cosmos Contracting and Alasia Bonds.

Second, the Court considers whether summary judgment is

appropriate against each of the individual signatories to the relevant Indemnity Agreements.  As set forth below, certain Defendants argue that the Indemnity Agreement they signed does not govern Plaintiffs' losses on the particular bonds that were issued, and other Defendants argue that they never actually signed the Indemnity Agreement.

Specifically, the Court concludes that:

(1) Plaintiffs' motion for summary judgment against GBE, G. Shinas, S. Shinas, M. Shinas, V. Shinas, G. Demtrulacos, and M. Demtrulacos pursuant the 1996 Indemnity Agreement is denied.  The 1996 Indemnity Agreement governs losses on bonds issued on behalf of Cosmos Group or GBE as the named Contractor, and cannot be used as a vehicle to indemnify Plaintiffs for losses on bonds issued on behalf of any alleged successor entity, i.e., Cosmos Contracting.

(2) Plaintiffs' motion for summary judgment against M. Demtrulacos pursuant to the 1997 Indemnity Agreement is also denied.  As explained below, M. Demetrulacos has submitted evidence sufficient to create a triable issue of fact as to the authenticity of her signature on the 1997 Indemnity Agreement.

(3) Plaintiffs' motion for summary judgment against I. Tzivelekis pursuant to the 1998 Indemnity Agreement is granted.  As explained below, I. Tzivelekis has failed to introduce evidence

13

sufficient to create a triable issue of fact with respect to her execution of the 1998 Indemnity Agreement.

(4) Plaintiffs' motion for summary judgment against Alasia, GBE, G. Shinas, P. Shinas, J. Rusin, and L. Rusin pursuant to the Alasia Indemnity Agreement is granted.  G. Shinas, P. Shinas, J. Rusin do not contest the validity of their signatures, and L. Rusin, who does contest the validity of her signature, cannot overcome the presumption of authenticity accorded notarized signatures under New York law.

### 1.   Legal Standard

### a.   Interpreting Contracts

Under New York law, the initial interpretation of a contract is a matter of law for the Court to decide.[7]  Alexander & Alexander Servs., Inc. v. Certain Underwriters at Lloyd's, London, 136 F.3d 82, 86 (2d Cir. 1998).  "Included in this initial interpretation is a threshold question of whether the terms of the contract are ambiguous."  Id.  An ambiguity exists

---

[7] Plaintiffs, in their moving papers, rely on New York law. (Pls.' Mem. L. 10-15.)  Neither M. Demetrulacos nor the Opposing Shinas Defendants contend that New York law should not be used to decide Plaintiffs' motion.  (M. Demetrulacos' Aff. Opp'n; Opposing Shinas Defs.' Mem. L.)  Accordingly, the Court applies New York law in deciding the Plaintiffs' motion.  See Motorola Credit Corp. v. Uzan, 388 F.3d 39, 61 (2d Cir. 2004) (holding that if parties' briefing assumes that New York law controls an issue, then the parties' implicitly consent to use New York law to decide the issue, which is sufficient to establish choice of law).

if a contract provision "could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business." Id. (internal quotation marks omitted). Summary judgment is appropriate if the contract is unambiguous; if no relevant extrinsic evidence of the parties' actual intent exists; or if the extrinsic evidence is so one-sided that no reasonable jury could decide contrary to the moving party's interpretation. SCS Commc'ns, Inc. v. Herrick Co., 360 F.3d 329, 342 (2d Cir. 2004); Alexander & Alexander, 136 F.3d at 86.

### b.   Enforcing Indemnity Agreements

New York courts have held, pursuant to indemnity agreements such as those allegedly signed by the Responding Defendants, that a surety makes a prima facie case that it is entitled to indemnification of any payments made pursuant to an indemnity agreement if the surety provides proof of the payments. See Prestige Decorating and Wallcovering, Inc. v. Untied States Fire Ins. Co., 49 A.D.3d 406, 407 (1st Dept. 2008). Once the surety has made its prima facie case, the surety is entitled to indemnification of the surety payments, unless those payments were made in bad faith or were of an unreasonable amount. See

15

id.; see also Frontier Ins. Co. v. Renewal Arts Contracting Corp., 12 A.D.3d 891, 892 (3rd Dept. 2004) (collecting cases). The question of whether the indemnitor was actually in default or liable under the contract covered by the indemnity agreement is irrelevant.  See Prestige Decorating, 49 A.D.3d at 407; Frontier Ins., 12 A.D.3d at 892.

### c.    Presumption of Validity for Notarized Signatures

Plaintiffs must also prove due execution of the Indemnity Agreements by the various defendants to establish that Plaintiffs are entitled to summary judgment against those defendants.  Under New York law, a certificate of acknowledgment by a notary public gives rise to a presumption of due execution that can be rebutted only upon "a showing of clear and convincing evidence to the contrary." Spilky v. Bernard H. La Lone Jr., P.C., 227 A.D.2d 741, 743 (1st Dept. 1996).  The mere "unsupported testimony of an interested witness" that he or she did not sign the document is insufficient to rebut the presumption that a notarized signature is authentic.  Demblewski v. Demblewski, 267 A.D.2d 1058, 1058 (4th Dept. 1999); see also Lum v. Antonelli, 102 A.D.2d 258, 260-61 (2d Dept. 1984) ("[A] certificate of acknowledgment should not be overthrown upon evidence of a doubtful character, such as unsupported testimony of interested witnesses, nor upon bare preponderance of evidence, but only on proof so clear and

16

convincing as to amount to a moral certainty.") (<u>quoting</u> <u>Albany County Sav. Bank v. McCarty</u>, 149 N.Y. 71, 80 (1896)).

### 2. Application

The "Indemnity Agreements" provide that:

> [The] Contractor and Indemnitors shall . . . exonerate [and] indemnify . . . the Surety . . . from and against any and all liability for losses and/or expenses of whatsoever kind or nature . . . and from and against any such losses and/or expense which the Surety may sustain and incur . . . [b]y reason of having executed or procured the execution of the Bonds . . . .[8]

(Along Aff. Ex. A.)

Under the Indemnity Agreements' broad settlement authority, and in accordance with New York law, the Surety is entitled to recover for all such disbursements "made by it in good faith" and, furthermore, "vouchers or other evidence of [surety payments] . . . shall be prima facie evidence of the fact and amount of liability to the Surety." (<u>Id.</u>)  The Surety's actual liability or necessity in making the surety payments is irrelevant under the contract. (<u>Id.</u>)

Here, Plaintiffs provided proof of surety payments on the Cosmos Contracting and Alasia Bonds in the form of itemized claims extracts, which tracked paid losses and other expenses Plaintiffs sustained by reason of having executed the bonds.

---

[8] This indemnification obligation extends to any "other sureties" (here, AXA) who execute Bonds on behalf of the named Surety (here, FIA's). (Along Aff. Ex. A.)

(Pls. 56.1 Stat. ¶ 63; Along Aff. Exs. G & H.)  Thus, Plaintiffs have made out a <u>prima facie</u> case entitling them to indemnification for the surety payments made on the Cosmos Contracting and Alasia Bonds.  To avoid summary judgment on these claims, Responding Defendants must demonstrate the surety payments were made in bad faith or were for an unreasonable amount.  Responding Defendants fail to do so.

The various affidavits and Rule 56.1 Statements submitted on behalf of the Responding Defendants offer either observations that are irrelevant under the terms of the contract, or conclusory allegations insufficient to create a triable issue of fact with respect to the propriety of Plaintiffs' surety payments.  The Responding Defendants do not allege, much less offer evidence of, bad faith on the part of Plaintiffs in making the surety payments.  As for the amounts, Responding Defendants allege, for example, that the claims extracts are merely "self-serving documents" prepared by Plaintiffs, and that the claimed losses are "inflated" as Plaintiffs "grossly overspent" to complete the bonded projects.  (<u>See</u> J. Rusin, L. Rusin, and Alasia's Resp. to Pls.' Rule 56.1 Stat. ¶¶ 61, 63-64; Aff. J. Rusin ¶¶ 12, 22; Aff. G. Shinas ¶ 22.)  These conclusory allegations are, however, insufficient to overcome Plaintiffs' proof of valid surety payments, and to avoid summary judgment.

See <u>Prestige Decorating</u>, 49 A.D.3d at 407 ("[Third-party defendant's] conclusory affidavits failed to raise a triable issue of fact as to either the bona fides of the payment or the reasonableness of its amount."); <u>Int'l Fid. Ins. Co. v. Spadafina</u>, 192 A.D.2d 637, 639 (2d Dept. 1993) (same).

Therefore, Plaintiffs are entitled to summary judgment on their contractual indemnification claim with respect to payments made on the Cosmos Contracting and Alasia Bonds.  The Court next considers which signatories to each of the four Indemnity Agreements can be held responsible for the payments made on the four Cosmos Contracting Bonds and the Alasia Bond.

### a.   1996 Indemnity Agreement

Plaintiffs seek to hold signatories to the 1996 Indemnity Agreement liable for the losses Plaintiffs sustained on the Cosmos Contracting Bonds.[9]  The parties dispute, however, whether this Agreement, which identifies "Cosmos Group" as the named Contractor, governs Plaintiffs' losses on bonds issued on behalf of "Cosmos Contracting," the bonds at issue.

Plaintiffs argue that signatories to the 1996 Indemnity Agreement are obligated to indemnify Plaintiffs for losses on the Cosmos Contracting Bonds because Cosmos Contracting is the "legal

---

[9] Notarized signatures of defendants G. Shinas, S. Shinas, M. Shinas, V. Shinas, G. Demtrulacos, and M. Demtrulacos appear on the 1996 Indemnity Agreement.

successor" to Cosmos Group.  Plaintiffs argue that the terms of the Indemnity Agreements govern payments on bonds issued on behalf of the "Contractor and . . . its successors."  (Alongi Aff. Ex. A.)  Defendants argue, in response, that the scope of the Indemnity Agreements is limited to those bonds issued on behalf of the named contractor, and accordingly, the obligation of indemnification does not extend to any successor entity.

The Court agrees with Responding Defendants that the Indemnity Agreements do <u>not</u> provide for any obligation to indemnify the Surety for losses on bonds issued on behalf of a Contractor's successor entity.  The Court finds that the contract's provisions are unambiguous in this regard.[10]

The limited scope of the Indemnity Agreements is set out in Agreements' introductory clauses.  The first "whereas clause" defines "Bonds" as the present and future surety bonds "<u>the Contractor</u> . . . may desire, or be required to give or procure . . . ."  (Alongi Aff. Ex. A (emphasis added).)  The second "whereas clause" then states (now, from the Surety's perspective) that "the Surety . . . may from time to time hereafter execute or procedure to be executed, <u>said Bonds on behalf of the Contractor</u>."  (<u>Id.</u> (emphasis added).)  The Agreements nowhere

---

[10] For this same reason, the Court grants below the Shinas Defendants' motion for summary judgment on Plaintiffs' contractual indemnification claim pursuant to the 1996 Indemnity Agreement.

20

refer to Bonds issued on behalf of any successor to the named "Contractor."

Plaintiffs' near singular reliance on a provision in the Indemnity Agreements that states that the Contractor, Indemnitors, and Surety "hereby covenant and agree" that not only they, but their "successors and assigns," will be bound by the contracts' terms, is misplaced.  This provision demonstrates an intention, consistent with the logic of successor liability, to bind the successors of each of the parties to the obligations of the Agreement, not to make <u>bonds</u> issued by the contractor's successor subject to the provisions of the Agreement.

Indeed, Plaintiffs' construction is effectively an attempt to hold a <u>predecessor</u> company and its principals (<u>e.g.</u>, Cosmos Group) liable for bonds issued on behalf of a successor company (<u>e.g.</u>, Cosmos Contracting).  There is no support, either within the contract or the law of successor liability, for this result.  Thus, even if Plaintiffs are correct that Cosmos Contracting should be deemed the "mere continuation of" and "legal successor" to Cosmos Group, signatories to the 1996 Indemnity Agreement nonetheless cannot be held liable pursuant to that Agreement for losses sustained on Cosmos Contracting Bonds.

The Court concludes that the scope of the 1996 Indemnity Agreement is unambiguous and that its terms extend only to bonds

issued on behalf of Cosmos Group or GBE as the named contractors. The Court, therefore, denies Plaintiffs' motion for summary judgment on their contractual indemnification claim pursuant to the 1996 Indemnity Agreement.

### b.    1997 Indemnity Agreement

There is no dispute that the 1997 Indemnity Agreement, which identifies Cosmos Contracting as the named Contractor, governs Plaintiffs' losses on the Cosmos Contracting Bonds.  Thus, signatories to the 1997 Indemnity Agreement are liable to Plaintiffs for payments made pursuant to the four Cosmos Contracting Bonds.

As noted above, notarized signatures of G. Demtrulacos and his then wife M. Demtrulacos appear on the 1997 Indemnity Agreement.[11]  M. Demtrulacos claims, however, that she never saw or signed the 1997 Indemnity Agreement, and has submitted the affidavit of a forensic document examiner (the "McNally Affidavit") to buttress her claim.[12]  The McNally Affidavit

---

[11] Plaintiffs are not moving for summary judgment against G. Demtrulacos.

[12] Plaintiffs note that M. Demtrulacos never disclosed the identity of the document examiner as an expert witness during the discovery period pursuant to Fed. R. Civ. P 26(a)(2), and that discovery closed a year before M. Demtrulacos filed of her affidavit in opposition.  Plaintiffs, however, do not suggest an appropriate sanction, nor do they detail any prejudice they have suffered. Therefore, the Court declines to impose a discovery sanction here.

states that the signature of M. Demtrulacos on the 1997 Indemnity Agreement does not match M. Demtrulacos's signature as found on her U.S. Passport and approximately 71 personal checks.[13] (M. Demetrulacos' Aff. in Opp'n Ex. C.)

Under New York law, self-serving testimony of an interested witness is ordinarily insufficient to rebut the presumption of authenticity accorded to a notarized signature. Demblewski, 267 A.D.2d at 1050. However, M. Demtrulacos's testimony, when combined with her expert submission, creates a triable issue of fact as to whether M. Demtrulacos signed the 1997 Indemnity Agreement. See Orix Financial Services, Inc. v. Thunder Ridge Energy, Inc., No. 01 Civ. 4788, 2006 WL 587483 (S.D.N.Y. Mar. 8, 2006) (finding that, under New York law, conclusory affidavit that one defendant to a guaranty bearing her name did not sign the guaranty did not create a triable issue of fact, but that affidavit of handwriting expert submitted by other defendants was sufficient to rebut the presumption of authenticity accorded notarized signatures). The Court thus denies Plaintiffs' motion for summary judgment against M. Demtrulacos pursuant to the 1997 Indemnity Agreement.

---

[13] Although M. Demtrulacos states that she also did not sign the 1996 Indemnity Agreement (see M. Demetrulacos' Aff. in Opp'n ¶ 8), the Document Examiner's opinion is limited to her signature on the 1997 Agreement. (M. Demetrulacos' Aff. in Opp'n Ex. C.)

### c.   1998 Indemnity Agreement

There is also no dispute that the 1998 Indemnity Agreement, which identifies Cosmos Contracting as the named contractor, governs Plaintiffs' losses on the Cosmos Contracting Bonds. Thus, signatories to the 1998 Indemnity Agreement are also liable to Plaintiffs for payments made pursuant to the four Cosmos Contracting Bonds.

As noted above, notarized signatures of W. Tzivelekis and his wife I. Tzivelekis appear on the 1998 Indemnity Agreement.[14] I. Tzivelekis admitted in deposition testimony that her signature on the 1998 Indemnity Agreement is authentic, but maintains that she does not recall signing the document in front of a witness or notary public, and instead specifically recalls signing it in her kitchen at home.[15]   (Alongi Aff. Ex. C; Tzivelekis Depo. at 71-73.)   However, because I. Tzivelekis does not dispute that her signature is authentic, the Court finds no triable issue of fact as to I. Tzivelekis's due execution of the Agreement.   Therefore, the Court grants Plaintiffs' motion for summary judgment against I. Tzivelekis pursuant to the 1998 Indemnity Agreement for

---

[14] W. Tzivelekis is not named as a defendant in this action.

[15] In her Rule 56.1 Response, submitted pro se, I. Tzivelekis states that she recalls signing "a form" her husband brought home; but again she does not specifically controvert the authenticity of her signature.   (I. Tzivelekis 56.1 Resp. ¶ 20.)

payments made on the Cosmos Contracting Bonds in the amount of $20,939,812.36.

### d.   Alasia Indemnity Agreement

The Alasia Indemnity Agreement, as noted above, identifies Alasia as one of the contractors on whose behalf FIA executed and/or procured surety bonds.  Signatories to this Agreement, as either contractors or indemnitors, are therefore liable to Plaintiffs for payments made pursuant to the Alasia Bond.

Only one signatory, L. Rusin, claims that her signature is not authentic.[16]  L. Rusin, however, claims that she did not sign the Alasia Indemnity Agreement.  Her contention has too little support to raise a triable issue of fact.  She has offered only (1) her own testimony that she did not sign the Alasia Indemnity Agreement, and (2) copies of her signature on her driver's license and U.S. Passport.  L. Rusin's unsupported testimony and the bare examples of her signature fail to raise a triable issue of fact to rebut New York's presumption of due execution.  See

---

[16] Defendant J. Rusin argues in his affidavit that Plaintiffs' action against Alasia should be dismissed because Plaintiffs incorrectly named "Alasia Corporation," and not "Alasia Co." (a partnership), as the captioned defendant.  (Aff. J. Rusin ¶ 3.)  The Court rejects this argument, however, because Alasia has actively litigated the matter for three years prior to the filing of Plaintiffs' motion, and appears never to have never raised as an affirmative defense that it was not properly named in the suit.  J. Rusin's remaining allegations do not create any triable issue of fact with respect to Plaintiffs' entitlement to indemnification for the Alasia losses pursuant to the terms of the Alasia Indemnity Agreement.

25

John Deere Ins. Co. v. GBE/Alasia Corp., 57 A.D.3d 620, 621 (2d Dept. 2008).[17]

As set forth above, neither the Russin defendants nor the Shinas defendants raise any triable issue of fact to dispute that Plaintiffs are entitled to indemnification for the surety payments made on the Alasia Bond.  Therefore, the Court grants Plaintiffs' motion for summary judgment against Alasia, GBE, G. Shinas, P. Shinas, J. Rusin, and L. Rusin pursuant to the Alasia Indemnity Agreement for payments made on the Alasia bond in the amount of $194,326.30.

### 3.   Conclusion

Thus, to summarize, on Plaintiffs' contractual indemnification claim, the Court GRANTS Plaintiffs' motion against (1) I. Tzivelekis pursuant to the 1998 Indemnity Agreement in the amount of $20,939,812.36., and (2) Alasia, GBE, G. Shinas, P. Shinas, J. Rusin, and L. Rusin pursuant to the Alasia Indemnity Agreement in the amount of $194,326.30.  The

---

[17] The Appellate Division in John Deere - a decision involving defendant L. Rusin and another indemnity agreement bearing her and her husband's signature - reached the same result.  57 A.D.3d at 621.

Seaboard Sur. Co. v. Earthline Corp., 262 A.D.2d 253 (1st Dept. 1999), on which certain defendants rely, is not to the contrary. Although the court in Seaboard found the presumption of authenticity rebutted by testimony that the defendant's signature was a forgery, the court there relied on evidence of "discrepancies on the face of the notary's acknowledgment lending further substance" to the defendant's claim.  No such discrepancies have been presented here.

Court DENIES Plaintiffs' contractual indemnification claim against the other Responding Defendants.

### B.   Common Law Indemnification Claim

Plaintiffs also seek to hold Alasia and GBE liable under a theory of common law indemnification.[18]

New York courts describe common law indemnification as an equitable remedy for unjust enrichment.  McDermott v. City of New York, 50 N.Y.2d 211, 216-17 (1980).  New York law recognizes a right to common law indemnification where "payment by one person is compelled, which another should have made"; in such instances "a contract to reimburse or indemnify is implied by law."  Id. (internal quotations omitted); see Westbank Contracting Inc. v. Rondout Valley Cent. Sch. Dist., 46 A.D.3d 1187, 1189 (3rd Dept. 2007).

The Court has already found Alasia liable for payments made on the Alasia Bond pursuant to Plaintiffs' contractual indemnification claim.  It is, therefore, unnecessary for the Court to consider whether Alasia may also be liable in quasi-contract.  See Goldman v. Metropolitan Life Ins. Co., 5 N.Y.3d 561, 572 (2005); see also Clark-Fitzpatrick, Inc. v Long Is. R.R.

---

[18] The Court notes that Plaintiffs' second amended complaint states that Plaintiffs also seek indemnification from Cosmos Contracting.  (Second Am. Compl. ¶¶ 130-32.)  However, Plaintiffs now describe Cosmos Contracting as a non-party to this action.

<u>Co.</u>, 70 N.Y.2d 382, 388 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter.")

With respect to GBE, Plaintiffs do not explain whether they seek to hold GBE liable for both the Alasia losses and the Cosmos Contracting losses.  As to the Alasia losses, the Court has already found GBE liable for payments pursuant to the Alasia Indemnity Agreement, and need not consider whether GBE is liable in quasi-contract.  As to the Cosmos Contracting losses, Plaintiffs fail to explain why GBE, which is not the identified principal on any of the Cosmos Contracting Bonds, should be held liable under a common law theory of indemnification.

The Court, therefore, denies Plaintiffs' motion for summary judgment on its common law indemnification claim against both GBE and Alasia.

### C.   M. Demetrulacos' Counterclaims

M. Demetrulacos asserts the following counterclaims against Plaintiffs:  defamation, intentional and negligent infliction of emotional distress, malicious prosecution, sanctions, and restitution.   Plaintiffs move for summary judgment on all of M. Demetrulacos's counterclaims, on the ground that none states a claim on which relief can be granted.   The Court agrees with

28

Plaintiffs, and GRANTS Plaintiffs' motion for summary judgment dismissing all of M. Demetrulacos's counterclaims.

### 1. Defamation

M. Demetrulacos alleges she has been defamed by the allegations in the Second Amended Complaint that M. Demetrulacos participated in a scheme driven by members of the Shinas family to defraud Plaintiffs.

Under New York law, "[a] statement made in the course of a judicial proceeding 'is absolutely privileged if, by any view and under any circumstances, it may be considered pertinent to the litigation.'" <u>Fabrizio v. Spencer</u>, 248 A.D.2d 351, 351 (2d Dept. 1998) (<u>quoting</u> <u>Martirano v. Frost</u>, 25 N.Y.2d 505, 507 (1969)). An action for libel or defamation will only lie where the statement is "so obviously [not pertinent] . . . and so needlessly defamatory as to warrant the inference of express malice." <u>Martirano</u>, 25 N.Y.2d at 508.

M. Demetrulacos's allegations fail to state a claim for defamation, because the allegedly defamatory statements were made in the context of judicial pleadings, and about matters pertinent to Plaintiffs' action.  The Court thus grants Plaintiffs' motion for summary judgment dismissing M. Demtrulacos's counterclaim for defamation.

### 2. Intentional and Negligent Infliction of Emotional Distress

M. Demetrulacos also sues for intentional and negligent infliction of emotional distress.  M. Demetrulacos alleges that Plaintiffs' "unsubstantiated and defamatory statements" in this litigation, coupled with Plaintiffs' initiation of what is its second lawsuit against her,[19] has caused her "great emotional distress and financial expense . . . [and] is a recipe [given her pre-existing physical condition] for serious permanent damage and/or death."  (M. Demetrulacos' Aff. in Opp'n ¶ 42.)

To state a claim for either intentional or negligent infliction of emotional distress in New York, Plaintiffs must allege conduct "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Murphy v. American Home Prods. Corp., 58 N.Y.2d 293, 303 (1983); Wolkstein v. Morgenstern, 275 A.D.2d 635, 636-37 (1st Dept. 2000) (internal quotations omitted).

M. Demetrulacos's counterclaims and supporting affidavit do not allege conduct of such character.  Thus, the Court grants

---

[19] Plaintiff AXA initially brought suit against M. Demetrulacos (among other defendants) in New York state court for indemnification under the 1997 Indemnity Agreement.  A stipulation of discontuiance was entered into in that case dismissing AXA's claims, and M. Demetrulacos's counterclaims, without prejudice.

Plaintiffs' motion for summary judgment dismissing M. Demtrulacos's counterclaim for intentional and negligent infliction of emotional distress.

### 3.   Malicious Prosecution

M. Demetrulacos's counterclaim for malicious prosecution also fails.  Under New York law, to establish a claim for malicious prosecution, M. Demetrulacos must show: (1) the initiation of an action by the Plaintiffs, (2) begun with malice, (3) without probable cause to believe they can succeed, and (4) that ends in failure, or in other words terminates in favor of the defendant, M. Demetrulacos.  O'Brien v. Alexander, 101 F.3d 1479, 1484 (2d Cir. 1996) (citing Broughton v. State of New York, 37 N.Y.2d 451, 457 (1975)).  In addition, New York courts require "proof of special injury as a necessary component of a malicious prosecution claim."  Engel v. CBS, Inc., 93 N.Y.2d 195, 198 (1999).  "[D]efendant[s] must abide some concrete harm that is considerably more cumbersome than the physical, psychological or financial demands of defending a lawsuit."  Id. at 205.

M. Demetrulacos does not state a viable claim for malicious prosecution with respect to either the prior state court suit or the current action.  M. Demetrulacos has submitted no evidence to suggest that either suit was brought with malicious intent or without probable cause.  Nor has either lawsuit been terminated

31

in M. Demetrulacos's favor:  the state court action was terminated pursuant to a stipulation that discontinued the action <u>without</u> <u>prejudice</u>, and the current suit is still ongoing. Finally, M. Demetrulacos has not alleged the required special injury necessary to sustain a claim for malicious prosecution.[20]

Thus, the Court grants Plaintiffs' motion for summary judgment dismissing M. Demetrulacos's claim for malicious prosecution.

### 4.    Restitution

M. Demetrulacos's final counterclaim is for restitution. Restitution is available when one party has been enriched at the expense of another.  <u>See</u> <u>Bazak Int'l Corp. v. Tarrant Apparel Group</u>, 347 F. Supp. 2d 1, 4 (S.D.N.Y. 2004).  M. Demetrulacos fails to allege how Plaintiffs benefitted at M. Demetrulacos's expense.  Thus, the Court grants Plaintiffs' motion for summary judgment dismissing M. Demetrulacos's claim for restitution.

## II.  **The Shinas Defendants' Motion**

In this action, Plaintiffs allege more broadly that numerous defendants, including several members of the Shinas family and businesses allegedly controlled by members of that family, engaged in an elaborate scheme to defraud Plaintiffs.  Plaintiffs

---

[20] To the extent M. Demetrulacos also seeks sanctions under Rule 11, that claim fails for substantially the same reasons.

32

allege that defendants prepared false financial statements and created a number of sham corporations and joint ventures in an effort to secure bonding capacity far beyond that which their financial means would otherwise have merited.  (Second Am. Compl. ¶¶ 2-4.)  Plaintiffs allege that defendants then illicitly diverted money away from these bonded projects for their own personal gain, causing Plaintiffs' losses. (Id.)  Plaintiffs allege, in addition to their contractual and common indemnification claims addressed above, (1) violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), (2) violations of New Jersey's civil RICO statute, (3) fraud, (4) negligent misrepresentation, (5) unjust enrichment, (6) diversion of trust funds, and (7) fraudulent conveyance.

Shinas Defendants here move for summary judgment on all claims against them.  As set forth below, because the Shinas Defendants involvement in the alleged fraud remains a disputed question of fact, the Court denies those aspects of the Shinas Defendants' motion directed at Plaintiffs' racketeering and other fraud-based claims.  The Court does, however, grant those aspects of the Shinas Defendants' motion directed to (as explained above) the limited scope of the 1996 Indemnity Agreement and any now duplicative claims for unjust enrichment.

**A.    Civil RICO - Violations of 18 U.S.C. §1962(c) (Count I)**

To prevail on a private cause of action under RICO, a plaintiff must show he was injured "by reason of" the defendant's alleged RICO violation.  18 U.S.C. § 1964(c).  This requires a plaintiff to show that defendant's violation was both the "but-for" and the "proximate" cause of the plaintiff's injury.  <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 128 S.Ct. 2131, 2141 (2008) (<u>citing</u> <u>Holmes v. Sec. Investor Prot. Co.</u>, 503 U.S. 258, 268 (1992).   As the Supreme Court recently stated in <u>Bridge</u>, "[i]n most cases, the plaintiff will not be able to establish even but-for causation if no one <u>relied</u> on the misrepresentation . . . [and] the complete absence of reliance may prevent the plaintiff from establishing proximate cause."  128 S.Ct. at 2144 (emphasis added).

Shinas Defendants argue that Plaintiffs cannot establish causation on their RICO claim because Plaintiffs did not rely, in procuring the surety bonds, on any of the alleged misrepresentations contained in financial statements prepared or submitted by any of the Shinas Defendants.  Shinas Defendants argue that Plaintiffs relied exclusively on the financial statements of G. Demetrulacos and W. Tvivelekis in issuing the Cosmos Contacting Bonds.

This argument is unavailing.  First, assuming Plaintiffs need to show reliance to establish causation on their RICO claim,

34

it is a disputed question of fact as to whether Plaintiffs relied to their detriment on financial representations of the Shinas Defendants in their decision to procure surety bonds on behalf of Cosmos entities.[21]  Second, there is a factual dispute concerning the Shinas Defendants' alleged role as the architects of a scheme to defraud Plaintiffs.  Plaintiffs allege that the Shinas Defendants (1) put in place G. Demetrulacos and W. Tvivelekis as "straw men" to secure additional state contracts, and (2) diverted the proceeds from the bonded projects for their own personal gain.  (RICO Stat. ¶¶ 3(a),(d); 5(a)-(x).)

The Court, therefore, denies the Shinas Defendants' motion for summary judgment on Plaintiffs' RICO claim.

### B.    Fraud, Constructive Fraud, Negligent Misrepresentation, NJ Insurance Fraud, and Conspiracy to Commit Fraud (Counts III, IV, VI, VII, and VIII)

Shinas Defendants also move for summary judgment on all of Plaintiffs' fraud-based claims, claiming that, as set forth above, Plaintiffs cannot establish their reliance on any misrepresentations connected to the Shinas Defendants.  As stated above, these are questions of fact to be decided by the fact-finder.

---

[21] The question of whether it was reasonable for Plaintiffs to have relied on the financial representations of the Shinas Defendants in connection with the Cosmos Contracting Bonds is not presented on this motion.

**C.   NJ Civil RICO, NJ Insurance Fraud, Conspiracy to Commit Fraud, and Fraudulent Conveyance (Counts II, VII, VIII, and XIV)**

Shinas Defendants contend that certain of Plaintiffs' claims must be dismissed because they are predicated on New Jersey law, rather than New York law.

A federal court ordinary applies the choice of law rules of its forum state, here New York.  In this case, however, venue was transferred from federal district court in New Jersey to this Court based on <u>forum non conviens</u>.  28 U.S.C. § 1404(a). Federal courts are bound to apply the same choice of law rules the <u>transferor</u> court would have applied (those of New Jersey) if the case had not been transferred.  <u>Ferens v. John Deere Co.</u>, 494 U.S. 516 (1990); <u>Van Dusen v. Barrack</u>, 376 U.S. 612 (1964).

Under New Jersey choice of law rules, the court must first determine whether there is a conflict among the potentially applicable laws.  <u>Agostino v. Quest Diagnostics Inc.</u>, 256 F.R.D. 437, 461-62 (D.N.J. 2009).  The parties have not adequately briefed the choice of law issue.  Therefore, the Court denies Shinas Defendants' motion for summary judgment on these claims without prejudice.

**D.   Alter Egos, Contractual Indemnification, and Common Law Indemnification (Counts IX, XX, and XI)**

As set out in the Shinas Defendants' moving papers, Shinas

Defendants' cross-move for summary judgment on Plaintiffs' contractual indemnification claim (Count X) for losses Plaintiffs sustained on the Cosmos Contracting Bonds.  As explained above, the Court has determined that the 1996 Indemnity Agreement, to which certain of the Shinas Defendants are signatories, cannot be used to indemnify Plaintiffs for losses on any Cosmos Contracting Bonds.  That Agreement, the Court has found, governs losses only on bonds issued on behalf of GBE or Cosmos Group as the named contractors.  Because the Court has found the provisions of the 1996 Indemnity Agreement unambiguous in this regard, the Court grants Shinas Defendants' motion for summary judgment dismissing Plaintiffs' contractual indemnification claim for losses sustained on the Cosmos Contracting Bonds.

### E.    Unjust Enrichment (Count V)

To state a claim for unjust enrichment, a party must allege (1) that the defendant was enriched; (2) that the enrichment was at the Plaintiffs' expense; and (3) that justice requires that in equity and good conscience the defendant should return the money. Bazak Int'l Corp. v. Tarrant Apparel Group, 347 F. Supp. 2d 1, 3-4 (S.D.N.Y. 2004).

Shinas Defendants first argue that Plaintiffs have alleged no set of facts that would show that Shinas Defendants were enriched at Plaintiffs expense.  That is inaccurate.  Plaintiffs

37

allege that Shinas Defendants illicitly diverted bonded funds into their own bank accounts, provide evidentiary support for their allegations (wire transfer records and bank records).

Shinas Defendants also argue they are entitled to summary judgment on Plaintiffs' unjust enrichment claim because a claim in quasi-contract is precluded where there is a valid and enforceable contract covering the same subject matter.  See Goldman, 5 N.Y.3d at 572.

The Court has already found that the 1996 Indemnity Agreement does not govern Plaintiffs' losses on the Cosmos Contracting Bonds.  The Court, therefore denies the Shinas Defendants' motion for summary judgment with respect to the Cosmos Contracting losses.  As to the Alasia losses, the Court has already granted summary judgment against GBE, G. Shinas, and P. Shinas for losses pursuant to Alasia Indemnity Agreement. Therefore, the Court grants the Shinas Defendants' motion for summary judgment on Plaintiffs' now duplicative unjust enrichment claim against these defendants for losses on the Alasia Bond.

## F.    Diversion of Trust Funds, Violation of New York Statutory Trust Fund, and Fraudulent Conveyance (Counts XII, XIII, and XIV)

Plaintiffs also bring claims arising out of Defendants' alleged diversion of trust funds.  These claims include breach of contract, violations of New York's Statutory Trust Fund Law (Lien

38

Law), and fraudulent conveyance.

Shinas Defendants argue in their moving papers that they are entitled to summary judgment on at least Plaintiffs' claim for diversion of trust funds in violation of Article 3-A of New York's Lien Law.   Shinas Defendants contend that Plaintiffs have failed to demonstrate that they made any payments as a surety to claimants under any trust funds held by Cosmos Contracting <u>prior</u> to Cosmos Contracting's voluntary default on the bonds.   Shinas Defendants, however, do not explain why this fact, even if true, entitles them to summary judgment on Plaintiffs' claim for diversion of trust funds.   Therefore, the Court denies the Shinas Defendants' motion for summary judgment on Plaintiffs' claims for diversion of trust funds.

## III.  CONCLUSION

To summarize, the Court GRANTS in part and DENIES in part Plaintiffs' motion for summary judgment.   (D.E. 106.) Specifically, the Court:

(1) GRANTS Plaintiffs' motion for summary judgment on its contractual indemnification claim against I. Tzivelekis in the amount of $20,939,812.36 pursuant to the 1998 Indemnity Agreement, and against Alasia, GBE, G. Shinas, P. Shinas, J. Rusin, and L. Rusin in the amount of $194,326.30 pursuant to the Alasia Indemnity Agreement; DENIES Plaintiffs' contractual

39

indemnification claim against the remaining Responding
Defendants;

(2) DENIES Plaintiffs' motion for summary judgment on its common
law indemnification claims; and

(3) GRANTS Plaintiffs' motion for summary judgment dismissing M.
Demetrulacos's counterclaims.

The Court also GRANTS in part and DENIES in part the Shinas
Defendants' motion. (D.E. 176.) Specifically, the Court GRANTS
Shinas Defendants' motion for summary judgment on Plaintiffs'
contractual indemnification claim with respect to losses on the
Cosmos Contracting Bonds, and on Plaintiffs' unjust enrichment
claim against GBE, G. Shinas, and P. Shinas for losses on the
Alasia Bond. The Court DENIES the Shinas Defendants' motion in
all other respects.

The parties shall submit, in accordance with the Court's
Individual Practices, a Joint Pretrial Order to the Court for its
approval no later than November 2, 2009.

SO ORDERED.

Dated:    New York, New York
          September 30, 2009

          Kimba M. Wood
          United States District Judge

40